UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ANNA L. GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:14 CV 00076 JMB |
| | ) |
| CAROLYN COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Anna L. Green ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act") (42 U.S.C. §401 *et seq*). This Court has jurisdiction over the matter pursuant to the judicial review provisions of the Act at 42 U.S.C. §§ 405(g) and 1381(c)(3), along with the consent of the parties, under 28 U.S.C. §636(c). Because the final decision of the Commissioner is not supported by substantial evidence as explained below, the decision is reversed and remanded.

## I. Procedural Background

The Plaintiff in this case is a fifty year-old female with an 11th grade education and past work as a certified nursing aide ("CNA"). (Tr.[1] 43-44) She alleges disability due to back pain, migraines, diabetes, Chronic Obstructive Pulmonary Disease ("COPD"), obstructive sleep apnea, left ventricular hypertrophy, anxiety, depression, bipolar disorder and obesity. (ECF No. 14 at 1)

Plaintiff applied for disability benefits on June 28, 2011. (Tr. 147-54) Both her DIB and SSI applications were denied on August 16, 2011. (Tr. 78-80) Thereafter, Plaintiff requested a hearing before an administrative law judge ("ALJ") to contest the denial. On April 11, 2013, the

---
[1] "Tr." refers to the administrative record filed in this case by the Defendant. (ECF No. 13-1 through 13-13)

ALJ held a hearing at which the Plaintiff appeared and testified, along with a vocational expert ("VE"); the Plaintiff was represented by counsel at the hearing. (Tr. 38-72) On May 5, 2013, the ALJ issued his decision in the case, finding that the Plaintiff was not disabled. (Tr. 8-29) On July 18, 2013, the Plaintiff petitioned for review of the ALJ's decision; but on June 11, 2014, the Appeals Council denied review of the ALJ's determination. (Tr. 6-7, 1-5) Thus, the July 18, 2013 decision of the ALJ is the final decision of the Commissioner, and the case is ready for disposition in this Court.

## II.  Medical Evidence Before the ALJ[2]

The Plaintiff's alleged disability onset date is April 5, 2010. (Tr. 147, 149) As mentioned above, the Plaintiff alleges disability due to back pain, migraines, diabetes, COPD, obstructive sleep apnea, left ventricular hypertrophy, anxiety disorder, depressive disorder, bipolar disorder and obesity. (ECF No. 14 at 1)

The Plaintiff's documented problems began in May of 2008, when she was seen at the Community Health Center ("CHC") for complaints of headache and back pain. (Tr. 404) CHC prescribed medication for her reported difficulties related to sleeping, leg, and back pain, and medication for general depression and anxiety. (Tr. 383-403) On October 27, 2009, the Plaintiff was seen at CHC for medication refills relating to her back pain. (Tr. 393)

Over time, the Plaintiff was also seen for her other ailments. For example, on November 13, 2009, the Plaintiff saw Frank Froman, EDD, at Psychology Associates Inc. for a Mental Status Exam. (Tr. 423) Dr. Froman concluded that the Plaintiff suffered from very mild depression and that her difficulties "[did] not seem limited to any significant degree by any psychological problems."

---

[2]  The Court has reviewed the entirety of the medical record; but because the Court is remanding this case to more fully develop the record concerning the Residual Functional Capacity ("RFC"), the Court will focus its discussion on medical evidence that factored into the RFC.

2

On February 16, 2010, and June 4, 2010, the Plaintiff returned for treatment to CHC, this time for examinations of her heart and lungs, which were normal. She also reported intermittent headaches at this time. (Tr. 384-88) Her treatment for chest pains included X-rays and stress echocardiograms at the Hannibal Free Clinic in October of 2010. (487-495) Many of these tests, however, turned out normal, and the Plaintiff was advised to diet. (Tr. 585)

On February 2, 2011, the Plaintiff began to see Erik Meidl, M.D., at the Hannibal Clinic. (Tr. 519-22) Dr. Meidl noted that the Plaintiff was "doing well" except for "shortness of breath" and "low back pain radiating across her low back." (Tr. 519) Plaintiff continued to visit the Hannibal Clinic regularly over the following months. (Tr. 794) Plaintiff saw Dr. Meidl mainly for lower back pain issues.

Early in 2011, diagnostic imaging showed degenerative changes in the Plaintiff's L3-L4, L4-L5, and L5-S1 vertebrae, and epidural fat causing canal stenosis at L4-L5 and L5-S1. (Tr. 511-14) In treating the Plaintiff for these problems, Dr. Meidl repeatedly advised her to stop drinking alcohol and begin weight loss therapy. (Tr. 524, 532, 538) He also prescribed an epidural injection to treat the back pain which the Plaintiff initially refused, and for which Plaintiff's insurance refused to pay in any event. (Tr. 538, 785)

In August of 2011, the Plaintiff was still complaining about low back pain. (Tr. 776-77) By October of that year, after the Plaintiff's insurance refused to cover the cost of epidural injections, Dr. Meidl was prescribing Vicodin to help the pain. (Tr. 785) The Plaintiff saw Dr. Meidl again on November 11, 2011 for ongoing back pain. She said that the Vicodin was helping with the pain, but made her somewhat sleepy. (Tr. 792) The final time that the Plaintiff visited the Hannibal Clinic in 2011 was on December 5, when she asked if the doctor could arrange for her to get assistance with her housework. (Tr. 794)

On November 11, 2011, Dr. Meidl completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) on behalf of the Plaintiff. (Tr. 638-42) Dr. Meidl opined that the Plaintiff had the following restrictions: she could (1) lift 10 pounds occasionally; (2) frequently lift and carry less than 10 pounds; (3) stand and/or walk less than two hours in an eight-hour workday; she must (4) periodically alternate sitting and standing; and (5) she could never crouch, crawl or stoop. (Tr. 638-40) The record contains no evidence of any complaints or treatments from December 2011 until May 2012. On May 3, 2012, she reported that her back pain improved with Vicodin, and said that her breathing was doing well. (Tr. 798)

On September 14, 2012, she reported substantial back pain that worsened when she lifted objects weighing 10-15 pounds. (Tr. 803-07) The Plaintiff also reported leg swelling, and that she needed an inhaler to walk up a hill; she also reported some pain in her knees when walking, generalized mild aches in upper extremities, and mild pain in the posterior thigh and buttocks on straight leg raising. (Id.) Dr. Meidl noted that, while the Plaintiff could not return to her past work as a CNA, she could do a desk job that would let her get up and stretch periodically. (Tr. 806) On October 18, 2012, the Plaintiff saw Dr. Meidl again, and reported that her back pain was better and that she was tolerating the pain without any side effects of the increased dosage of medication. (Tr. 810)

On March 5, 2013, Dr. Meidl completed a second MSS of Ability to do Work-Related Activities (Physical) that differed from his first MSS in one critical matter: her ability to sit. (Tr. 832-35) In this MSS, Dr. Meidl opined that the Plaintiff could: (1) lift 10 pounds occasionally; (2) frequently lift and carry 10 pounds; (3) stand and/or walk at least 2 hours in an 8-hour

4

workday; (4) *sit less than 6 hours in an 8-hour workday with normal breaks*[3]; and (5) occasionally climb, balance, kneel, crouch, crawl and stoop. (Id.) He further noted that the Plaintiff has spinal stenosis at L4-L5 and L5-SI, and that the Plaintiff is limited by low back pain and knee pain. (Id.) (emphasis supplied)

Also before the ALJ was third party evidence submitted by two friends of the Plaintiff in October of 2011. (Tr. 630-37) Both friends reported that the Plaintiff had a bad back and suffered from high stress. However, they had different opinions on how much the Plaintiff could lift—one felt she could only lift five pounds, while the other felt she could lift 25 pounds.

Finally, the evidence before the ALJ included the record of the April 11, 2013 hearing at which both the Plaintiff and a VE testified. The Plaintiff testified to her ongoing physical symptoms. In addition to her back pain, she described issues relating to migraine headaches, shoulder and knee pain, as well as COPD and diabetes.

As it specifically relates to her back pain, and the ability to sit and stand, the Plaintiff testified that she has lower and upper back pain that "shoots down at [the] knees" and the "back of [her] legs." (Tr. 48) Plaintiff testified that she can only stand and do activities like washing dishes for "about 15 minutes;" and that she can only sit for "about five or ten minutes" before the pain gets too bad and she has to stand up. (Id. 48-49) The Plaintiff described the pain of sitting for more than five or ten minutes as a "stabbing and burning" pain. (Id.)

The Plaintiff also testified regarding her medications, the side effects those medications have on her, and the mental impairments that she claims contribute to her inability to work. (Tr. 53-55) Finally, she testified regarding her alcohol consumption, evidence of marijuana usage, and her daily activities. (Tr. 56-58)

---

[3] A State agency decision maker also found that Plaintiff could only sit for less than 6 hours. (Tr. 457-62) Although the ALJ did not rely on that information at all—and properly so, because the decision maker was not a medical professional—the Court does find it relevant that the agency agreed Plaintiff can sit for *less than 6 hours*.

5

The VE, meanwhile, testified that someone with the Residual Functional Capacity ("RFC") found by the ALJ, combined with the Plaintiff's past work experience, age, and education, could not perform the Plaintiff's previous work as a CNA; but such a person could perform jobs such as (1) hand assembler, (2) machine tender, or (3) table worker. (Tr. 67-68)[4]

### III. The ALJ's Decision

The ALJ's decision in this case followed the familiar five step analysis to determine disability status. At Step One, the ALJ found that Plaintiff was not engaged in substantial gainful activity ("SGA") since she allegedly became disabled. (Tr. 13) At Step Two, he found that the Plaintiff had the following severe impairments:

- Lumbar spine degenerative changes;
- Diabetes;
- Asthma/COPD;
- Obstructive sleep apnea;
- Hyperlipidemia;
- Hypercholesterolemia;
- Left Ventricular Hypertrophy;
- Hypertension;
- Anxiety, Depressive, and Bipolar disorders;
- Substance Abuse; and
- Obesity

(Tr. 13)

At Step Three, the ALJ found that Plaintiff had not met her burden to prove that she suffered from any impairment or combination of impairments that would indicate presumptive disability. (Tr. 14) Then, the ALJ undertook his duty to evaluate and formulate an RFC for the Plaintiff so that he could proceed to a Step Four analysis of whether she was capable of returning to her previous work. Ultimately, the ALJ found that the Plaintiff had the following RFC:

> To lift/carry up to 10 pounds occasionally. *She can sit up to six hours but must be allowed the opportunity to stand and stretch for two to three minutes every 45 to*

---

[4] These findings are discussed in more detail in the next section.

> *60 minutes*. She can stand/walk two hours but for no more than 10 to 15 minutes at a time. She is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. She can never climb ladders, ropes, and scaffolds. She must avoid extreme exposure to extreme cold, extreme heat, high humidity, and low humidity. She must avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. She is limited to simple, routine, repetitive tasks. She is limited to low stress work in static environment with relatively few changes. The work cannot be fast paced and cannot have stringent production quotas. Finally, she is limited to only occasional and superficial contact with others. (Tr. 15) (emphasis supplied)

The ALJ then found that based upon her RFC, the Plaintiff could not engage in her past work as a CNA. The ALJ then proceeded on to Step Five, where he found—based on the testimony of the VE—that given the Plaintiff's age, education, work experience, and RFC, she could perform the requirements of occupations such as hand assembler, which has 6,000 jobs in the state and 280,000 nationally, machine tender, with 5,000 jobs in the state and 242,000 nationally, and table worker, with 7,000 jobs in the state, and 472,000 nationally. Therefore, the ALJ concluded, the Plaintiff was not disabled within the meaning of the Act. (Tr. 67-68)

## IV. Issues Before the Court

The general issue in this appeal is whether the Defendant's adverse determination as to Plaintiff's disability status is supported by substantial evidence on the record as a whole. More specifically, there are three subsidiary issues in this appeal:

i. Whether the decision of the ALJ to not give controlling weight to the opinion of Plaintiff's treating physician was proper;
ii. Whether the RFC is supported by substantial evidence, and whether it complied with the dictates of SSR 96-8p requiring a narrative bridge describing how the evidence supports each conclusion within the RFC; and
iii. Whether the ALJ's credibility determination relating to the Plaintiff was patently erroneous.

Although the Court has considered all of the issues between the parties in this case, and all of their arguments, the Court's analysis will focus on the RFC determination by the ALJ.

7

Because that determination is not supported by substantial evidence, the decision of the Commissioner must be reversed.

## V. Standard of Review

Under 42 U.S.C. §405(g) and controlling Eighth Circuit case law, this Court reviews the final decision of the Commissioner to determine whether that decision is supported by substantial evidence on the record as a whole. Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994). Substantial evidence, in turn, is "less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

Thus, the decision of the Commissioner may not be reversed solely because this Court might have decided the case differently. Id. at 1022. Instead, this Court must determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the Commissioner's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001).

Additionally, this Court will determine whether the Commissioner faithfully applied the familiar five step process to determine whether an individual qualifies for disability. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the Plaintiff retains the RFC to perform her previous work; if the Plaintiff proves she cannot do so, then the burden switches to the Commissioner at

Step Five to prove that there is work in the national economy that the Plaintiff can do, considering her age, work experience, education, and RFC.

Finally, and particularly relevant to this case, it is the ALJ's burden "to develop the record fairly and fully, independently of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) (reversing the Commissioner in order to more fully develop the record where uncontroverted medical evidence showed that Claimant had heart disease that was inconsistent with the Commissioner's RFC).

## VI. Discussion

As discussed above, the parties dispute three main points. They dispute whether the decision of the ALJ to not give controlling weight to the opinion of the Plaintiff's treating physician was proper, whether the RFC is supported by substantial evidence, and whether the ALJ's credibility determination relating to the Plaintiff was erroneous. This Court will only address the question of the Plaintiff's RFC, specifically as it relates to the finding that the Plaintiff can sit for at least six hours, with breaks for getting up every forty five minutes.[5]

With regard to the RFC, the Plaintiff argues that the ALJ erred for several inter-related reasons. First, the ALJ did not credit Dr. Meidl's specific finding that the Plaintiff could not sit

---

[5] Although the Court cannot definitively approve the ALJ's analysis of the Plaintiff's credibility because more medical evidence is needed with regard to the sitting limitation, the Court notes that the ALJ's analysis regarding Plaintiff's credibility concerning the other complaints is strong.

For instance, the Plaintiff complains of disabling mental impairments which affect her memory and ability to complete tasks, concentrate, understand and follow directions. (Tr. 16) The ALJ found that Plaintiff is not credible in describing the extent of her symptoms. The ALJ backs this up with citation to objective medical evidence, such as a normal psychological examination, during which Plaintiff's depression and anxiety were well-controlled. (Tr. 19) During Plaintiff's hospitalization for chest pain in October of 2010, she was fully alert and oriented, pleasant, and appropriate; she also later denied having any memory loss, depression, or other mental illness, and on examination, was fully alert and oriented with normal mood and affect. (Id.) Plaintiff was also diagnosed with a Global Assessment of Function Score of 55, indicating only moderate symptoms in occupational or social functioning—this was inconsistent with her subjective assertions of disabling mental impairments. Also, the ALJ based his credibility determination on the Plaintiff's daily activities, as reported in her Function Report. These activities include caring for grandchildren, preparing meals, shopping and driving. (Tr. 20)

The ALJ thus addressed many of the credibility factors enumerated in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Therefore, the ALJ's assessment of the Plaintiff's credibility in areas other than her ability to sit seems to be supported by substantial evidence.

for six hours. (Tr. 18) The Plaintiff argues that Dr. Meidl's finding is supported by substantial evidence—namely, an MRI showing "degenerative changes" at several areas on the spine, a positive straight leg raising test, swelling, the need for the patient to be on pain medication, as well as various treatment notes describing the Plaintiff's back pain. Because of this evidentiary support, the Plaintiff argues that the doctor's opinion is entitled to controlling weight. See 20 C.F.R. 404.1527(c)(2).

Second, the Plaintiff argues that, regardless of the weight given to Dr. Meidl's opinion, no substantial evidence supports the ALJ's RFC limitation regarding sitting because there is no contrary "evidence in the record" that shows that the Plaintiff can in fact sit for six out of eight hours. Thus, the Plaintiff argues that the ALJ crafted the RFC "out of thin air."

This Court agrees with the Plaintiff that the decision of the Commissioner must be reversed, and the cause remanded for further proceedings. The main issue in this case relates to the ALJ's RFC finding that the Plaintiff "can sit up to six hours but must be allowed the opportunity to stand and stretch for two to three minutes every 45 to 60 minutes." (Tr. 21)

First, this RFC limitation is directly contrary to Dr. Meidl's opinion, which, as explained below, is entitled to controlling weight on the present state of the record. The second issue is that the specific limitation (regarding the ability to sit) that the ALJ included has no basis in any objective medical evidence, and therefore is not supported by substantial evidence. It is well-settled that an RFC must be based on at least "some evidence." See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (noting that although the ALJ is not limited to considering medical evidence, the ALJ was required to consider at least some supporting medical evidence from a professional in formulating an RFC). The Court will address these issues in turn.

First, the Court agrees with the Plaintiff that, on the state of the record as it is developed right now, the opinion of Plaintiff's primary and treating physician regarding her ability to sit is entitled to controlling weight under the Commissioner's regulations at 20 C.F.R. §404.1527(c)(2). Under that provision, the opinion of a treating physician is entitled to controlling weight where it is—

i. Well supported by medically acceptable clinical and laboratory diagnostic techniques; and
ii. Not inconsistent with the other substantial evidence in the case.

Here, Dr. Meidl's conclusions are at least consistent with several pieces of medical evidence indicating back issues that would lead to sitting restrictions. This evidence includes MRI imaging showing degenerative disc problems, (Tr. 512) a positive straight leg raising test, (Tr. 521) documented swelling, treatment notes discussing back pain, (Tr. 532-33) the list of Plaintiff's pain medications, (Tr. 822-30) and subjective complaints from the Plaintiff regarding back pain.[6]

Meanwhile, there is no medical evidence contradicting Dr. Meidl's conclusions. The only evidence that is arguably inconsistent with Dr. Meidl's report is the ALJ's subjective observations of the Plaintiff at the April 2013 hearing, and the Plaintiff's statement during the hearing that she watches television for eight hours a day. But the ALJ cannot overturn the clear medical conclusion of a treating physician that is supported by substantial evidence on this basis alone. See Ludden v. Bowen, 888 F.2d 1246, 1248-9 (8th Cir. 1989) ("Subjective complaints of pain may not be rejected solely on the basis of the ALJ's personal observations."). Thus, Dr. Meidl's opinion in this regard is entitled to controlling weight under §404.1527(c)(2).

---

[6] Apart from the medical opinion of the Plaintiff's treating physician, there was other, non-medical evidence in the record to support Dr. Meidl's findings. For instance, although the ALJ properly did not afford any weight to it, this Court does find it at least relevant that a State agency decision-maker agreed with Plaintiff's treating physician; and there was evidence from third parties that the Plaintiff suffered from severe back issues. (Tr. 458, 630-37)

11

The second issue that the Court will turn to is the paucity of evidence in support of the RFC, even apart from the question of weight given to the treating physician's opinion. Indeed, it appears to the Court that the evidence that Plaintiff cannot sit for six hours is un-contradicted by other medical evidence, but that the limitation did not make it into the RFC. See Snead v. Barnhart, 360 F.3d 834-37 (8th Cir. 2004) (reversing the Commissioner where evidence of an incurable disease went un-contradicted but did not make it into the Commissioner's RFC).

In other words, even if the ALJ had ample reason for his decision not to adopt the opinion of Dr. Meidl, this Court can locate no medical evidence to support the ALJ's conclusion that Plaintiff's sitting ability amounts to six hours in an eight hour workday. An RFC must be supported by *some* medical evidence. It is not clear what medical source the ALJ used in constructing this portion of the RFC. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).

Thus, at bottom, the problem here is the failure to develop the record relating to this RFC limitation relating to sitting. It is well established that it is the duty of the ALJ to fully and fairly develop the record. In this regard, the current case has parallels to the case of Snead v. Barnhart, 360 F.3d 834 (8th Cir. 2004). In Snead, the Commissioner had originally found the plaintiff disabled because of, *inter alia*, his alcoholism. A statutory change after the plaintiff's original adjudication made clear that alcoholism or drug addiction was not grounds for disability. Thus, upon redetermination, the Commissioner found the Plaintiff not disabled. However, at the redetermination hearing, the plaintiff presented evidence that he had a heart condition that he claimed would independently qualify him for disability. The ALJ, however, did not sufficiently investigate this condition, and held that the plaintiff was not disabled; while agreeing with the ALJ's determinations regarding alcoholism, the Court of Appeals reversed in order "to permit the Commissioner to develop the record fully regarding Snead's physical condition." Id. at 836.

The Snead court noted that "[w]ell-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully" regarding the independent physical grounds asserted for disability, and that where the record shows the ALJ did not further investigate that ground the "void in the evidence evinces a failure by the ALJ to fully and fairly develop the record." Id. at 838.

Similarly, in this case, the ALJ seemingly had doubts about the specific limitation relating to an inability of the Plaintiff to sit for at least six hours, but he did not independently develop medical evidence (by for instance, ordering a consulting examination) that would have shown that the Plaintiff can in fact sit for six hours. That was error.

The failure of evidence with regard to the RFC limitation on sitting is to be contrasted with the other limitations contained in that RFC; and the treatment by the ALJ of these other limitations should be instructive upon remand.

In the ALJ's discussion of Plaintiff's purported mental impairments, the ALJ clearly and cogently cites to evidentiary medical evidence regarding those limitations, and draws a reasonable RFC limitation from the evidence. (See Tr. 19-20) For example, in the discussion of Plaintiffs difficulties sustaining concentration, persistence or pace, the ALJ reviewed the Plaintiff's Function Report, considered the testimony of third parties, and took into account his own observations of the Plaintiff. The ALJ then crafted a responsive RFC limitation. This is the type of analysis that—upon remand—should take place relating to the Plaintiff's ability to sit.

In the end, it may very well be that there is other medical evidence that can show that the Plaintiff has the ability to sit for at least six hours; but that evidence has not been developed, and it is the burden of the Commissioner to fully and fairly develop that record. Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000). If the ALJ did not believe that the professional opinions

13

available to him were sufficient to allow him to form an opinion, he could have further developed the record.  See Lauer, 245 F.3d at 706.

Because of this failure to develop the record to include medical evidence that contradicts the medical evidence of the treating physician and supports the ALJ's RFC, the finding that the Plaintiff can sit for six hours is not supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Plaintiff's application for disability benefits under Title II and Title XVI of the Social Security Act is **REVERSED** and this cause is **REMANDED** for further proceedings consistent with this Memorandum and Order.

A separate Judgment shall accompany this Memorandum and Order.

Dated this  17th  day of August, 2015.

      /s/ *John M. Bodenhausen*
   JOHN M. BODENHAUSEN
   UNITED STATES MAGISTRATE JUDGE